Dudley Clifford BELL, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. C14-87-00219-CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 16, 1989.

James W. Patterson, Robert C. Hunt, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

JUNELL, Justice.

A jury convicted appellant of the solicitation of Adrian Franks to commit capital murder and assessed punishment at thirty-eight years confinement in the Texas De-

partment of Corrections and a $10,000 fine. In sixteen points of error appellant challenges the sufficiency of the evidence, evidentiary and discovery rulings made by the trial court, the court's charge, the court's failure to dismiss the indictment on speedy trial grounds, and the prosecutor's final argument. We affirm.

In late 1976 complainant, Barbara Piotrowski, met Richard Minns, the founder of the President's First Lady chain of health clubs. A romantic relationship developed between complainant and Minns and they lived together for a period of time. The relationship came to an acrimonious end in March, 1980 when complainant moved to an apartment by herself.

Shortly after the relationship ended, Minns, appellant, and two Houston police officers came to complainant's apartment and seized property allegedly taken by complainant when she separated from Minns. Theft charges were filed against complainant, but later dropped.

Appellant was the owner of Dudley Bell International Inc., a private investigating company, and Minns was appellant's client. The State's evidence shows that, in July, 1980, appellant asked at least two people to kill complainant at the behest of Minns. One of those individuals was Adrian Franks.

In late September or early October, 1980, appellant's friend, Bob Anderson, solicited Nathaniel Ivory and Patrick Stein to kill complainant. On October 20, 1980, Ivory shot complainant four times leaving her paralyzed from her chest down.

In his first point of error appellant contends there was insufficient evidence to convict him because Franks's testimony was not corroborated as required by section 15.03(b) of the Texas Penal Code Annotated (Vernon 1974) which provides:

A person may not be convicted under this section on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation.

This section is analogous to article 38.14 of the Texas Code of Criminal Procedure Annotated (Vernon 1979) and should be read in conjunction with it. *Richardson v. State*, 700 S.W.2d 591, 594 (Tex.Crim.App. 1985). Article 38.14 states that a conviction cannot be sustained on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the offense. In the trial of a solicitation offense, the evidence must be corroborative of both the solicitation and the solicitor's intent. *Saunders v. State*, 572 S.W.2d 944, 954–55 (Tex.Crim. App. [Panel Op.] 1978). The test used to evaluate the corroborating evidence is to eliminate from consideration the accomplice testimony and determine whether there is other evidence which tends to connect the defendant with the crime. *Adams v. State*, 685 S.W.2d 661, 667–68 (Tex.Crim.App. 1985). The corroborating evidence need not directly link the defendant with the crime or be sufficient in itself to establish guilt. *Richardson v. State*, 700 S.W.2d at 594. Although the use of the word "strongly" in section 15.03(b) seems to suggest that a different standard should apply, the court of criminal appeals has held that the term "strongly corroborative" does not indicate a different standard but only reemphasizes the need for some additional safeguard. *Richardson v. State*, 700 S.W. 2d at 594. The additional safeguard provided by section 15.03(b) is that the corroboration must go to both the solicitation and the solicitor's intent. *Id.* In determining the sufficiency of the evidence in this case, we must first review Franks's testimony, and then review the corroborating evidence to determine if that evidence tends to connect appellant to the solicitation of Franks.

Franks testified that he was employed by appellant in 1978. He began work as a "gopher" but later became an investigator. In the summer of 1980, appellant instructed Franks to begin intense surveillance of complainant. Appellant also informed Franks that the client involved in the investigation of complainant was Richard Minns. Franks and Larry Rubenstein, pursuant to appellant's instruction, leased an apartment

adjacent to complainant's apartment. Franks placed a wiretap on complainant's telephone at the request of appellant. Franks taped the complainant's telephone conversations and forwarded the tapes to appellant. Franks removed the wiretap from complainant's telephone after he overheard her asking Southwestern Bell to check her telephone for wiretaps.

In July, 1980 appellant asked Franks if he knew anyone who would "hit," or kill someone. Franks responded, "No, not particularly; but tell me more about it." Appellant told Franks that he would pay $10,-000 for complainant to be killed. Franks told appellant he was not interested. Franks testified that a few weeks later, he encountered some financial difficulty and $10,000 "sounded good" to him. Franks asked appellant if the offer to kill complainant was still open and appellant replied, "You go ahead and work on it, then." Appellant suggested that Franks should follow complainant and examine her habits to determine an appropriate time and place to kill her. Appellant gave Franks an advance of $400 on the $10,000 fee.

When he began observing complainant, Franks discovered that she was difficult to follow because she drove very fast. He decided he could carry out his plan more effectively if he could stop her car at any given moment. Franks then devised a "kill switch" which, when installed on complainant's car, would allow him to disable her ignition system by remote control. Appellant saw Franks building the device and Franks told appellant it was a remote control "kill switch." Franks installed the device on complainant's car. Franks tried to activate the device once but it failed to stop complainant's car. He later learned that the device was removed by someone else.

Franks discussed his assignment with his neighbor Choppy Farr (also known as Bobby Day). Choppy suggested a gun would be an easy way to commit the murder. Choppy and Franks asked Sue Ellen Perkins, Choppy's girlfriend, to buy an inexpensive, small caliber gun that could be silenced. Ms. Perkins purchased a .22 caliber revolver from a pawn shop located on Bellaire Boulevard at the Chimney Rock intersection. Franks remembered the name of the shop was the Circle Pawn Shop. Franks and Choppy constructed a silencer for the gun from wire mesh and gauze. Franks and Choppy then went to complainant's apartment intending to kill her. Choppy knocked on complainant's door, but she would not open it, so Choppy and Franks left the premises.

After Franks tried to kill complainant for approximately one month, appellant told Franks that the offer was no longer open to him. Franks testified that appellant implied that Franks was taking too long and appellant would have to find someone else to kill complainant.

The testimony of Franks was corroborated by several other witnesses. The testimony of James Perry Dillard, Richard Waring, and Nathaniel Ivory corroborates Franks's testimony with regard to appellant's search for someone to murder complainant. James Perry Dillard, an employee of appellant, testified that appellant told Dillard he wanted a "pussy hit," which Dillard took to mean that appellant was looking for someone to kill a woman. Appellant offered Dillard $10,000 and a lifetime job at a health club in exchange for the murder of complainant.

Richard Waring testified that appellant asked him to shadow Minns to determine if Minns could be easily protected. After Waring reported that Minns could not be easily protected, appellant assigned Waring to watch complainant. Further, Waring testified that appellant asked Waring if he was interested in making some money "doing something." John Lyles, a Houston Police officer, testified that he heard Waring state that appellant asked Waring to "do something to someone."

Nathaniel Ivory testified that in late September or early October of 1980, appellant's friend, Bob Anderson, met Ivory and Patrick Stein in Riverside, California. Ivory and Stein accompanied Anderson to Houston where Anderson gave Ivory a .44 caliber revolver and asked Ivory if he and Stein would consider kidnapping a young woman. Ivory told Anderson he would

have to talk with Stein and decide if they could do it. Ivory and Stein discussed the kidnapping and informed Anderson the next day that they were interested. Anderson told Ivory and Stein that the woman's name was Barbara Piotrowski, that she was causing trouble for a married man and that "Judge Dudley" wanted Piotrowski killed rather than kidnapped. Anderson stated that Dudley would pay $10,000 for the murder. Anderson told the men that they would each receive $4000 and that he would keep $2000. Ivory and Stein did not agree immediately but contacted Anderson the next day and accepted Anderson's offer. Anderson gave the men a description of complainant's normal routine and told them that she should be killed on or before Monday, October 20, 1980.

After consulting with "Judge Dudley," Anderson took Ivory and Stein to complainant's apartment and showed them her car. Ivory and Stein set up surveillance on complainant's apartment. After waiting for twenty-four hours, Ivory and Stein grew tired of waiting for complainant to leave her apartment. Ivory concealed a pistol in an arm sling, walked to complainant's apartment, and knocked on complainant's door. Instead of opening the door, complainant asked who was at the door. Making up a name, Ivory asked if Lucy was there. Complainant responded that Lucy lived next door. The two men then left the premises.

On Monday, October 20, 1980, Ivory and Stein again waited in their car outside of complainant's apartment. Later in the afternoon the two men briefly left complainant's apartment. As the two men returned to complainant's apartment, Ivory saw complainant driving away in her car. Ivory and Stein began following complainant.

Complainant drove to a Winchell's doughnut shop and parked in front of the shop. Complainant jumped out of the car with the engine running and the keys in the ignition. Stein pulled his vehicle behind the doughnut shop. Ivory exited the car and began walking toward complainant's car. Ivory carried a .32 caliber pistol in his belt and a .44 caliber revolver in his hand which was concealed inside a paper bag and wrapped with a pillow. The pillow was used to muffle the sound of the weapon's discharge.

After purchasing some doughnuts, complainant walked to her car and sat down in the driver's seat. As she looked up, complainant saw Nathaniel Ivory standing beside her car pointing a paper bag directly at her. Ivory pulled the trigger, however the pillow caught in the hammer and the revolver did not fire. Piotrowski put the vehicle into reverse, pushed the accelerator to the floor and ducked down, putting her face down on the passenger's seat. Before she was able to retreat, her vehicle stalled, giving Ivory time to fire four bullets into her body. One of the bullets severed complainant's spine.

Houston Police Officers William Hamby and Don Parnell were on routine patrol when they heard the gunfire. After a high speed chase, the officers arrested Ivory and Stein.

Dudley Howden, a Houston Police Department bomb squad officer, corroborated Franks's testimony about the device Franks made to disable complainant's car. Howden testified that he inspected complainant's red 1978 Firebird in an auto storage lot. He found a metal box with wires extending to the electric ignition. Howden also testified that State's Exhibit 3–a was similar to the device taken out of the Firebird. State's Exhibit 3–a was identified by Franks as the device he had installed in complainant's vehicle.

Sue Ellen Perkins corroborated Franks's testimony about the purchase of the gun Franks planned to use to kill complainant. Sue Ellen Perkins, Choppy Farr's girlfriend, testified that she and Choppy bought a gun from the Royal Jewelry Pawn Shop located on Bellaire Boulevard at the Chimney Rock intersection. Although Franks's testimony was imprecise regarding the name of the pawn shop, he also testified that it was located on Bellaire Boulevard at the Chimney Rock intersection. Ms. Perkins further testified that Franks and Choppy spent several days trying to build a silencer for the gun using

directions from the Anarchist's Cookbook. Ms. Perkins also testified that Choppy and Franks said they were "going to watch a girl."

Barbara Piotrowski, complainant, corroborated several portions of Franks's testimony. She testified that she met Richard Minns in 1976 and developed a romantic relationship with him which ended in March, 1980. She saw appellant outside her apartment where he could observe her movements. She saw appellant once walking his dog and another time simply walking by her apartment. She also stated that she called the telephone company to ask them to investigate a possible wiretap on her telephone. She testified that one day as she was driving to her attorney's office her car stalled. She walked to her attorney's office and he brought her back to the location where she had left her car, but her car was gone. After several days she found her car at an auto storage lot. She told the attendant at the lot that she would need help starting her car. When he lifted the hood of the car to start it, he noticed the device attached to the ignition switch and called the bomb squad at the Houston Police Department. Complainant testified that an officer from the bomb squad removed the device from her car. Complainant also testified that she was shot four times on October 20, 1980.

■ The testimony of these witnesses sufficiently corroborates both the solicitation of Franks and appellant's intent that Franks carry out the murder. Disregarding the testimony of Franks, we find sufficient evidence to establish that appellant requested Franks to kill Barbara Piotrowski for remuneration. Appellant's first point of error is overruled.

In his second point of error appellant claims the trial court erred in not excluding evidence of several extraneous offenses. Prior criminal conduct that is collateral to the charge on which the defendant is being tried is ordinarily inadmissible. *Maynard v. State,* 685 S.W.2d 60, 66 (Tex.Crim.App. 1985). However, where an offense or transaction is one continuous episode, or another offense or transaction is a part of

the case on trial, or blended or closely interwoven therewith, proof of all of the facts is proper. *Mitchell v. State,* 650 S.W. 2d 801, 811 (Tex.Crim.App.1983) *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed. 2d 221 (1984). Evidence of extraneous offenses committed by the accused is admissible (1) to show the context in which the criminal act occurred under the reasoning that events do not occur in a vacuum, and that the jury has a right to hear what occurred immediately prior to, and subsequent to the commission of that act so that they may realistically evaluate the evidence; (2) to circumstantially prove identity where the State lacks direct evidence on this issue; (3) to prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself; (4) to prove malice or state of mind, when malice is an essential element of the State's case and cannot be inferred from the criminal act; (5) to show the accused's motive, particularly where the commission of the offense at bar is either conditioned on the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part; and (6) to refute a defensive theory raised by the accused. *Albrecht v. State,* 486 S.W.2d 97, 100–01 (Tex.Crim.App.1972).

■ In his first contention under point of error two appellant argues the trial court improperly admitted Franks's testimony that he placed wiretaps on complainant's telephone at the direction of appellant. Franks's testimony about wiretapping complainant's telephone was evidence of appellant's continuing plan to have complainant killed. Since the wiretapping was inextricably interwoven with the solicitation of Franks, we conclude that the evidence was admissible to show the context in which the criminal act occurred. Appellant's first contention under point of error two is overruled.

■ In his second and third contentions under point of error two appellant claims the testimony of James Perry Dillard and Richard Waring was not admissible because there was no showing that the of-

fenses to which Dillard and Waring testified were similar to the solicitation of Franks. Appellant argues that the solicitations of Dillard and Waring did not have the same "signature" as the solicitation of Franks. However, a high degree of similarity to the extent that an offense carries its own signature is only required in cases where identity is at issue. *Plante v. State,* 692 S.W.2d 487, 493 (Tex.Crim.App.1985).

The testimony regarding appellant's solicitation of Dillard and Waring was admissible to show the circumstances surrounding the crime charged. The testimony of Dillard and Waring showed that appellant was searching for someone to murder Barbara Piotrowski. The trial court did not abuse its discretion in allowing their testimony. Appellant's second and third contentions under point of error two are overruled.

In appellant's fourth contention under point of error two he claims that the testimony of Officer Hamby, Barbara Piotrowski, and Nathaniel Ivory was improperly admitted. Officer Hamby, complainant, and Ivory all testified to the shooting of complainant by Ivory. Appellant argues that the link between Anderson and appellant is not sufficient to admit Hamby's, Ivory's, and complainant's testimony.

■ Dorothy Wolfe testified that she attended a party with appellant at Anderson's home. Ms. Wolfe's testimony, taken with the other similar circumstances, provides a sufficient link between appellant and Anderson. The amount offered by Anderson to Ivory and Stein was $10,000, the exact amount offered by appellant to Franks, Waring, and Dillard. In addition, Anderson told Ivory and Stein that a man named "Judge Dudley" wanted complainant killed. We find the evidence provides a sufficient link between Anderson and appellant, and, as such, the extraneous offense testimony of Hamby, complainant, and Ivory was admissible. Appellant's fourth contention under point of error two is overruled.

In his fifth contention under point of error two appellant claims the trial court erred in refusing to grant a mistrial based on the testimony of Franks regarding an alleged burglary committed at the direction of appellant. The challenged testimony reads as follows:

Q. [By State's attorney] Now, from that point on did you do any more as far as investigative work or anything else as related to Barbara Piotrowski?

A. No, sir. In that time frame I'm not really sure. There were some other activities regarding her but as far as the exact time sequence I'm not sure.

Q. Activities insofar as you were concerned would be what sort of activities?

A. There was some files that were wanted by persons from her lawyer's office that I obtained.

Q. All right, sir. Now, let me—

[Appellant's attorney]: We're going to object to this. There is obviously going into extraneous matters having nothing to do with this particular offense.

THE COURT: You want to speak to that?

[State's attorney]: I will withdraw the question on that.

THE COURT: Thank you.

[Appellant's attorney]: We ask that the jury be instructed not to consider that answer for any purpose.

THE COURT: The jury won't consider that last answer.

[Appellant's attorney]: We would now at this point move for a mistrial based on the fact that the jury cannot get that out of their mind.

THE COURT: Mistrial denied.

■ Appellant contends that Franks's testimony informed the jury of an extraneous burglary committed at appellant's direction. He argues that the testimony was so inflammatory that the court's instruction to disregard did not sufficiently cure any error. Testimony referring to extraneous offenses allegedly committed by the defendant can be rendered harmless by an instruction from the trial judge. *Davis v. State,* 642 S.W.2d 510, 512 (Tex.Crim.App. [Panel Op.] 1982). In this case we conclude that the trial court's instruction was sufficient to cure any error. Appellant's fifth

contention under point of error two is overruled. Having overruled all of appellant's contentions under his second point of error, we overrule the point of error.

In his third point of error, appellant asserts seven contentions alleging the trial court erred in its charge to the jury. In his first, second, and sixth contentions appellant complains of the following limiting instruction:

> Evidence has been introduced in this case regarding the Defendant's having committed offenses other than the offense now alleged against him. You cannot consider this testimony for any purpose unless you believe beyond a reasonable doubt the testimony of such witness, if any. You are instructed that such evidence was offered for the purpose of corroborating, if it does, the solicitation of Adrian Franks, if any, and you may consider same for that purpose, and no other purpose.

■ Appellant argues that the instruction is a misstatement of the law and that it is an improper comment on the weight of the evidence. In his first and sixth contentions appellant argues that the instruction was improper because the jury could not consider extraneous offenses as corroborating evidence. However, as we discussed above, the extraneous offenses committed by appellant were admissible for the purpose of showing the circumstances surrounding the solicitation of Franks. Therefore, appellant was entitled to an instruction limiting the jury's consideration of the extraneous acts for the purpose of aiding the jury in determining whether the solicitation was committed. *See Sparks v. State,* 366 S.W.2d 591, 592 (Tex.Crim.App. 1963). The court's instruction correctly informed the jury that the evidence of extraneous offenses could only be considered for the purpose of corroborating Franks's testimony. Appellant's first and sixth contentions under point of error three are overruled.

■ Appellant next contends that the court's instruction was an improper comment on the weight of the evidence. To constitute reversible error, a comment on

the weight of the evidence must be such that it is reasonably calculated to benefit the State or prejudice the accused's rights. *Kincade v. State,* 552 S.W.2d 832, 835 (Tex. Crim.App.1977). In this case, since the instruction was given to benefit the accused, it cannot be the basis of a complaint by appellant. *See Jasso v. State,* 699 S.W.2d 658, 662 (Tex.App.—San Antonio 1985, no pet.) Appellant's second contention under point of error three is overruled.

■ In his third contention under point of error three appellant claims the trial court erred in not giving the jury an instruction that the testimony of one allegedly solicited could not corroborate the testimony of Franks. Appellant argues that Richard Waring and James Dillard were accomplice witnesses so their testimony could not be used to corroborate Franks's testimony. An accomplice witness is one who has participated with another before, during, and after the commission of a crime. *Villarreal v. State,* 576 S.W.2d 51, 56 (Tex.Crim.App.1978) *cert. denied,* 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979). In this case, the crime charged was the solicitation of Adrian Franks. Waring and Dillard did not participate in the solicitation of Franks; therefore, they cannot be accomplice witnesses. No instruction on accomplice witness testimony was necessary with regard to the testimony of Waring and Dillard. Appellant's third contention under point of error three is overruled.

In appellant's fourth contention under point of error three he asserts the trial court erred in failing to instruct the jury that they could consider appellant's extraneous offenses only as evidence of intent, scheme, or design. Appellant made a request to the trial court asking that the limiting instruction be included in the court's charge. Appellant's request was denied.

■ The record shows that the charge given by the court limited the jury's consideration of the extraneous offenses solely for the purpose of corroborating the testimony of Adrian Franks. Immediately prior to that instruction the trial court in-

structed the jury that the law required Franks's testimony be corroborated as to the solicitation itself, and the defendant's intent, if any, that Adrian Franks act on the alleged solicitation. The charge given tracks the language of section 15.03 of the Texas Penal Code Annotated (Vernon 1974). When a refused charge is substantially the same or is adequately covered by the charge given, no harm results from the failure to give the refused charge. *Hawkins v. State*, 660 S.W.2d 65, 81–82 (Tex. Crim.App.1983) *cert. denied,* — U.S. —, 109 S.Ct. 247, 102 L.Ed.2d 236 (1988).

We conclude that the charge actually given was substantially the same as, and adequately covered, the refused charge. The court's charge properly informed the jury under what circumstances the jury could consider appellant's extraneous offenses. The trial court did not commit error in denying appellant's requested instruction. Appellant's fourth contention under point of error three is overruled.

In his fifth contention under point of error three appellant claims the trial court erred in failing to instruct the jury that before they could consider evidence of an attempt to take the life of complainant, they would have to believe that appellant committed that offense. Appellant argues that the shooting of complainant by Nathaniel Ivory was an extraneous offense and the jury should have been instructed that, before they could consider testimony regarding complainant's shooting, they had to be convinced beyond a reasonable doubt that appellant was a party to the shooting. As we stated earlier, the court's charge properly informed the jury under what circumstances they could consider appellant's extraneous offenses. Appellant's fifth contention under point of error three is overruled.

In his seventh contention under point of error three appellant complains of the absence of a limiting instruction on the law of extraneous offenses at the punishment stage of the trial. Appellant urges that since a limiting instruction on extraneous offenses was given at the guilt-innocence stage, a similar instruction should also be given at the punishment stage. Since the extraneous offenses were admissible to corroborate Franks's testimony and to show the context in which the criminal act occurred, they were properly before the jury for consideration on punishment and no limiting instruction was required. *See Gantz v. State*, 661 S.W.2d 213, 221 (Tex. App.—San Antonio 1983, pet. ref'd). Appellant's seventh contention under point of error three is overruled. Having overruled all of appellant's contentions under appellant's third point of error, we overrule point of error three.

In his fourth point of error appellant contends the trial court erred in failing to instruct the jury that Adrian Franks was an accomplice witness as a matter of law. The charge given to the jury reads as follows:

> You are instructed that a person may not be convicted for solicitation on the uncorroborated testimony of the person allegedly solicited and unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the defendant's intent that the other person act on the solicitation, and the corroboration is not sufficient if it merely shows the commission of an offense, but it must tend to connect the defendant with its commission.

> And so, in this case, unless you find from the evidence beyond a reasonable doubt that the testimony of Adrian Franks is corroborated by other evidence in the case, outside of the evidence of the said Adrian Franks, and that the solicitation itself, if any, was made under circumstances strongly corroborative of both the solicitation itself, if any, and the defendant's intent, if any, that Adrian Franks act on the alleged solicitation, then you will acquit the defendant; or if you have a reasonable doubt as to the existence of either of such matters, then you will find the defendant not guilty.

The court's charge tracks the language of section 15.03 of the Texas Penal Code Annotated (Vernon 1974) which provides for corroboration of the testimony of one allegedly solicited. Section 15.03 is analo-

gous to article 38.14 of the Texas Code of Criminal Procedure Annotated (Vernon 1979) which provides for the corroboration of accomplice witness testimony. *Richardson v. State,* 700 S.W.2d at 594. The evidence in a case determines what jury instruction needs to be given with regard to an accomplice witness. When the evidence clearly shows the witness is an accomplice witness as a matter of law, the trial court must so instruct the jury. *Gamez v. State,* 737 S.W.2d 315, 322 (Tex.Crim.App.1987). An accomplice witness instruction would track the language of article 38.14 and instruct the jury that the testimony of the accomplice must be corroborated by evidence tending to connect the accused with the offense committed.

▇▇▇ The evidence in this case showed that Adrian Franks was one allegedly solicited. The court's charge instructed the jury to consider Franks's testimony only if they determined that his testimony was corroborated by evidence showing the solicitation itself and the defendant's intent that Franks act on the solicitation. Therefore, the court's charge instructed the jury to evaluate Franks's testimony in the same manner as if the court had declared him an accomplice witness as a matter of law with the addition of the section 15.03 requirement that the evidence corroborate both the solicitation and the solicitor's intent. Appellant's fourth point of error is overruled.

In his fifth point of error appellant claims the trial court erred in not setting aside the indictment for failure to afford him a speedy trial. In three contentions under point of error five appellant claims he was denied a speedy trial under the Speedy Trial Act, under the Interstate Agreement on Detainers Act, and under the United States and Texas constitutions.

▇▇▇ At trial appellant filed a motion to dismiss pursuant to article 32A.02 of the Texas Code of Criminal Procedure Annotated (Vernon 1979) ("Speedy Trial Act"). In *Meshell v. State,* 739 S.W.2d 246 (Tex.Crim. App.1987), the court of criminal appeals declared the Speedy Trial Act unconstitutional. The court held that by enacting the Speedy Trial Act the legislature had violated the separation of powers doctrine under article II, section 1 of the Texas constitution. *Id.* at 257. In *Stevenson v. State,* 751 S.W.2d 508, 509 (Tex.Crim.App.1988), the court held that the decision in *Meshell* was to be retroactively applied. Therefore, the Speedy Trial Act no longer affords appellant a remedy. Appellant's first contention under point of error five is overruled.

In his second contention under point of error five appellant claims he was denied a speedy trial in accordance with the Interstate Agreement on Detainers Act. (TEX. CODE CRIM.PROC.ANN. art. 51.14 (Vernon 1979)). ("IADA"). The IADA was enacted to provide a method where a prisoner in another state or federal institution could require disposition of charges pending against him. The IADA is a compact among member states, the United States, the territories and possessions of the United States, the District of Columbia, and the Commonwealth of Puerto Rico. The purpose of the IADA as set out in Article I is as follows:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges.

TEX.CODE CRIM.PROC.ANN. art. 51.14, Article I (Vernon 1979).

The IADA provides that a prisoner subject to a detainer from another state is entitled to be brought to trial within 180 days after he delivers to the charging state written notice of his place of imprisonment and his request for a final disposition of the indictment against him. *Id.* at Article III(a). The written request for final disposition is to be sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who

shall promptly forward it together with a certificate to the appropriate charging official and court. *Id.* at Article III(b). The IADA further provides that, in the event an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III (180 days), the appropriate court where the charge is pending shall enter an order dismissing the indictment with prejudice and the detainer based on the indictment shall no longer be in effect. *Id.* at Article V(c). However, the time period allowed to bring a defendant to trial is extended when the court grants a reasonable or necessary continuance. *Id.* at Article IV(c).

▮ Appellant was indicted in this case on April 18, 1985. Appellant was serving a sentence in the Federal Corrections Institute on conviction of an unrelated charge when the indictment in this case was filed. Appellant was tried in Harris County for the offense of solicitation of capital murder in February, 1987. Appellant claims he filed his Notice of Untried Indictments on August 7, 1985 and that, because the State failed to bring him to trial within 180 days, the indictment against him should be dismissed. However, the record in this case contains several agreed settings of the case signed by both attorneys. Therefore, the delay in bringing appellant to trial was due to the agreed settings. Those continuances are deemed necessary and reasonable as required by Article IV(c) of the IADA. *See Ex parte Saylor,* 734 S.W.2d 55, 57 (Tex. App.—Houston [1st Dist.] 1987, no pet.). The delays in bringing appellant to trial were not due to prosecutorial delay; therefore, the IADA provides no remedy for appellant. Appellant's second contention under point of error five is overruled.

▮ In his third contention under point of error five appellant claims he was denied a speedy trial in accordance with the United States and Texas constitutions. The factors to be considered in analyzing an alleged violation of an accused's right to a speedy trial are: (1) length of the delay, (2) reason for the delay, (3) prejudice to the defendant, and (4) possible waiver by the

accused. *Courtney v. State,* 472 S.W.2d 151, 153 (Tex.Crim.App.1971). As stated earlier, any delays in bringing appellant to trial were caused by appellant; therefore, appellant waived his right to speedy trial under the sixth amendment. *See Harlow v. United States,* 301 F.2d 361, 366 (5th Cir.1962) *cert. denied,* 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962). Appellant's fifth point of error is overruled.

In his sixth point of error appellant contends the trial court erred in overruling his objection to an indirect comment by the prosecutor on appellant's failure to testify. The relevant portion of the argument on punishment reads as follows:

> APPELLANT'S ATTORNEY: Dudley Bell's past, obviously there have been some problems, but this man is not charged or has not ever been convicted of any crimes of violence such has [sic] we have here. The people that were responsible for the actual shooting, they are not before you ladies and gentlemen and please don't make Dudley Bell pay for something or be the scapegoat for something when it hasn't even been shown that he is the party. A man of Dudley Bell's stature, if he was the bad criminal that I'm sure you're going to hear about, he would not be out talking to a 17 year old kid for what you've found him guilty of doing. I don't think he would be out hiring a man that can't even pull a trigger; can't even fire a gun.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> PROSECUTOR: Mr. Patterson talks about a man of his stature. A man of his stature would not have done it this way. I don't know whether—we know knowing about his stature other than he's a two time ex-con who was out trying to get somebody killed for $10,-000.

Appellant's counsel objected to this statement, claiming it was a comment on appellant's failure to testify. The court overruled his objection. Appellant now urges that the statements made by the State's attorney violated rights guaranteed by the fifth and fourteenth amendments to the

constitution of the United States and by article 38.08 of the Texas Code of Criminal Procedure Annotated (Vernon 1979).

An argument by the State will constitute a comment on the failure of appellant to testify only if the language used necessarily referred to the appellant. It is not sufficient that the language might be construed as an implied or indirect allusion. *Turner v. State,* 504 S.W.2d 843, 846 (Tex. Crim.App.1974). For comments such as the one made by the prosecutor to constitute reversible error they must call for a denial of an assertion of fact or contradictory evidence that only the appellant is in a position to offer. *Nowlin v. State,* 507 S.W.2d 534, 536 (Tex.Crim.App.1974). However, if the language used can reasonably be construed as referring to the appellant's failure to produce other testimony than his own, it is not improper. *Id.*

■ In this case, the State's attorney did not refer to any particular aspect of the case that could be controverted only be appellant. The State's argument was a reply to an argument of opposing counsel, which is an accepted general area of jury argument. *See Todd v. State,* 598 S.W.2d 286, 296–97 (Tex.Crim.App. [Panel Op.] 1980). We conclude the language used was not of such a nature that the jury would naturally and necessarily take it to be a comment on the failure of the defendant to testify. Appellant's sixth point of error is overruled.

In his seventh point of error appellant contends the trial court erred in not granting appellant his right to confront and cross-examine the prosecuting witness. Appellant asserts that he should have been permitted to question Adrian Franks about the exact amount of money involved in a pending credit card abuse charge filed against Franks. During appellant's cross-examination of Franks, the following exchange occurred:

Q. (by Appellant's attorney) Matter of fact, you have more than just this one felony credit card case pending against you at this time, do you not?

A. (Franks) Yes, sir, that's true.

Q. What else do you have pending against you?

A. To the best of my recollection all these cases have been pending for four or five years now. Credit cards abuse, unauthorized use of a motor vehicle, evading arrest, and since then I've also gotten stopped for driving while license suspended and I have a DWI case pending.

Q. Okay, sir. Then I assume that you are expecting help on every one of these cases, are you not?

A. I'm hoping for the best. I'm prepared for the worse [sic] but I'm hoping for the best.

Q. The agreement that you have or is it excuse me. Strike that. Is it your testimony that you have no agreement with the District Attorney's office?

A. That is exactly correct. Yes.

Q. You have never, or they have never told you that they are going to come forward and assist you on the charges that you just talked about?

A. That's correct.

Q. The credit card case in itself that involves quite a bit of money, does it not?

PROSECUTOR: Object. That is not a proper question or relevant question.

THE COURT: Sustained.

Appellant contends that the trial court should have allowed him to cross-examine Franks on the amount Franks allegedly stole from credit card companies. Ordinarily, a witness may not be impeached by a pending charge. However, a court may permit impeachment by pending charges to show the bias, prejudice, or interest of the witness in testifying. *Nethery v. State,* 692 S.W.2d 686, 699 (Tex.Crim.App.1985) *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). An issue regarding the general credibility of a witness in a criminal trial is not a material issue in the sense that it will justify the admission of inherently prejudicial evidence of details of an extraneous offense committed by the witness. *Murphy v. State,* 587 S.W.2d 718, 722 (Tex.Crim.App. [Panel Op.] 1979).

■ A review of the record shows that the jury was fully informed of the pending charges. Appellant's counsel asked Franks about the existence of any benefit which Franks might earn as a result of his testimony against appellant. Franks denied the existence of any agreement with the District Attorney's office. The exact amount Franks acquired through the alleged credit card abuse was not material to Franks's credibility. Appellant's seventh point of error is overruled.

■ In his eighth point of error appellant claims the trial court erred in allowing the State to impeach its own witness. Appellant asserts that the State should not have been permitted to impeach Richard Waring's testimony without first showing that the State was surprised by Waring's testimony. The Texas Rules of Criminal Evidence state that "[t]he credibility of a witness may be attacked by any party including the party calling him." TEX.R. CRIM.EVID. 607. Thus, the trial court did not err in allowing the State to impeach its own witness. Appellant's eighth point of error is overruled.

In his ninth point of error appellant contends the trial court erred in not allowing his counsel more time for final argument at the guilt-innocence phase of the trial. After both parties made their objections to the charge, appellant's counsel requested the court to expand final argument to one hour for each side. The court stated that one half hour would be sufficient and emphasized that, although the trial had lasted five days, there had been little testimony before the jury.

■ The time limits given by the trial court are subject to review to determine whether the court abused its discretion in setting the time restrictions. *Hernandez v. State,* 506 S.W.2d 884, 886 (Tex.Crim. App.1974). The factors to be considered when determining whether the trial court abused its discretion in allotting the time are: (1) the quantity of the evidence; (2) conflicts in the testimony; and (3) the complexity of the issues. *Decker v. State,* 734 S.W.2d 393, 395 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

In reviewing those factors, we conclude the trial court did not abuse its discretion in limiting the argument to thirty minutes. As the court noted, although the trial took five days, very little evidence was before the jury. The primary issue was the corroboration of Franks's testimony and the only evidence the jury heard was presented by the State. Appellant's ninth point of error is overruled.

■ In his tenth point of error appellant claims the trial court erred in allowing the State two final arguments at the guilt-innocence phase of the trial. Before argument to the jury, the two State's attorneys requested that their allotted thirty minutes be split between the two of them. The court gave the same option to appellant's two attorneys. Appellant now claims the trial court abused its discretion in allowing the prosecutors to split their time.

The order of argument of counsel is within the discretion of and may be regulated by the trial court. *Cherry v. State,* 488 S.W.2d 744, 757 (Tex.Crim.App.1972) *cert. denied,* 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973). No abuse of discretion is shown. Appellant's tenth point of error is overruled.

■ In appellant's eleventh point of error he claims the trial court erred in failing to give his requested charge on outcry of a witness. Article 38.07 of the Texas Code of Criminal Procedure Annotated (Vernon Supp.1989) provides that, in a sexual assault case where consent is an issue, the defendant is entitled to an instruction on whether the victim made an outcry within a reasonable time of the offense. The purpose of the instruction is to liberalize the onerous evidentiary requirements of proof in sexual assault cases. *Brown v. State,* 649 S.W.2d 160, 162 (Tex.App.—Austin 1983, no pet.). Appellant has cited us to no authority, nor can we find any authority, to support an outcry instruction in a solicitation of capital murder case. Appellant's eleventh point of error is overruled.

■ In his twelfth point of error appellant contends the trial court erred in over-

ruling his objection to the prosecutor's closing argument. Appellant objected to the following comments made by the prosecutor:

> Now it's time we do something for her. People have done things to her. She does things for people. Now we do something for her. What I'm going to ask you to do is something she can't do. What I'm going to ask you to do is stand up and walk. Walk in that jury room.

In considering appellant's contention, we note the litany of rules guiding our decision to the possible invidious effect of the State's argument. The accepted general areas of jury argument within which all arguments must fall are: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to an argument of opposing counsel; and (4) a plea for law enforcement. *Todd v. State,* 598 S.W.2d at 296–97. An argument outside these approved areas will not constitute reversible error unless the argument is manifestly improper or extreme, violates a mandatory statute, or injects some new fact or facts harmful to the defendant's cause. *Mathews v. State,* 635 S.W.2d 532, 539 (Tex.Crim.App. [Panel Op.] 1982). Since few, if any, arguments standing alone, call for automatic reversal, those arguments must be viewed in the context of the entire argument and the evidence in the case. *Henson v. State,* 683 S.W.2d 702, 704 (Tex.Crim.App.1984).

After reviewing the prosecutor's entire argument in context with the evidence in the case, we conclude that the State's argument was a proper plea for law enforcement. Appellant's twelfth point of error is overruled.

■ In his thirteenth point of error appellant contends the trial court erred in refusing to grant a mistrial when the prosecutor stated during closing argument: "I think Adrian Franks was very believable." As we stated earlier, it is important to consider alleged improper argument in context. The relevant portion of the prosecutor's argument is as follows:

> You heard Adrian Franks testify. You watched him, saw full and complete cross examination of him. You've got to decide do you believe it. I think Adrian Franks was very believeable [sic].

Appellant's counsel objected to the State's remark and the court sustained the objection and instructed the jury to disregard the statement.

An instruction to disregard improper jury argument is generally sufficient to cure error. *Anderson v. State,* 633 S.W.2d 851, 855 (Tex.Crim.App. [Panel Op.] 1982). Prior to the prosecutor's statement the prosecutor described the demeanor and physical appearance of Franks. After reviewing the closing argument we believe that the prosecutor was not stating more than that Franks's demeanor while testifying as a witness was good. In light of the record as a whole, we cannot say that the argument was extreme, manifestly improper, or that it injected new facts harmful to the accused into the trial proceeding. The trial court's instruction was sufficient to cure any error and a mistrial was not warranted. Appellant's thirteenth point of error is overruled.

In his fourteenth point of error appellant contends the trial court erred in refusing to grant his motion to dismiss based on the State's failure to timely produce its file. Prior to trial the court ordered the State to produce its entire file to the court for an *in camera* inspection. At trial, the parties discovered that, due to an error in the District Attorney's office, the entire file was not produced to the court. The court ordered the State to produce the remainder of its file to the court. The court inspected the file and delivered the relevant portions of the State's file to appellant. Appellant now argues that the prosecutor suppressed favorable evidence.

■ In determining whether reversible error occurred, we must look to the following three factors: (1) the suppression of evidence by the State after a request by the defense; (2) the evidence's favorable character for the defense; and (3) the materiality of the evidence. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Young v. State,* 552 S.W.2d 441, 443 (Tex.Crim.App.1977). The record be-

fore us does not show suppression of evidence by the State. The State furnished the remainder of its file as soon as the court determined part of the file was missing. Moreover, appellant has not shown what evidence was in the State's file and whether the evidence was either favorable, or material to the defense. Appellant's fourteenth point of error is overruled.

In his fifteenth point of error appellant contends the trial court erred in permitting the State to call witnesses not listed before trial. Appellant filed a pretrial motion requesting the names of all witnesses whom the State expected to call at trial. The trial court granted appellant's motion. Appellant argues that since the State's witness list did not include the names of Charles Lewis and Ron Woods, the testimony of those two witnesses should have been excluded. Appellant claims he was surprised and injured by the admission of Lewis's and Woods's testimony.

■ Lewis and Woods were not called as witnesses at the guilt-innocence phase of the trial. At the punishment phase of the trial Lewis and Woods were called for the purpose of identifying appellant as the person named in previous judgments. The trial court allowed their testimony over appellant's objection. Appellant did not allege, and has not shown, that the State acted in bad faith in calling Lewis and Woods to testify. Since no bad faith was shown, it was within the discretion of the trial court to permit the testimony of Lewis and Woods. *See Choice v. State,* 628 S.W.2d 475, 478 (Tex.App.—Texarkana 1982, no pet.). Appellant's fifteenth point of error is overruled.

In his sixteenth point of error appellant contends the trial court erred in not declaring appellant a pauper and (1) not granting him a court appointed attorney on appeal; (2) not granting him a free transcript; and (3) not forcing the State to rebut appellant's evidence. Appellant also contends the trial court erred in striking appellant's testimony because he failed to answer an improper question.

A determination of whether an appellant is entitled to a free transcription of the court reporter's notes is to be made on a case by case basis. *Abdnor v. State,* 712 S.W.2d 136, 141 (Tex.Crim.App.1986). An appellant who claims indigency and requests a statement of facts without charge must (1) exercise due diligence in asserting his indigency including the timely filing of his affidavit and (2) sustain the allegations of his affidavit as to indigency at the hearing. *Id.* at 140–41.

■ Two post-trial motion hearings were held to determine whether appellant was a pauper. The evidence submitted by appellant consisted of testimony from his defense counsel that they had not been paid for their legal services and the court reporter's testimony that the statement of facts would cost $3000 to $3500. Appellant testified that he was indigent and presented an affidavit supporting his testimony at the hearing. However, appellant refused to answer the State's questions regarding his income from Dudley Bell International, Inc. After appellant refused to answer on fifth amendment grounds, the State requested that appellant's testimony be struck. The trial court granted the State's request.

Reviewing the indigency hearing as a whole, we determine that appellant failed to sustain his allegations of indigency. Appellant's sixteenth point of error is overruled.

The judgment of conviction is affirmed.