Alvaro AREVALO, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–91–00592–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 18, 1992.

Moses M. Sanchez, Houston, for appellant.

Scott A Durfee, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

Alvaro Arevalo, appellant, was indicted for the offenses of delivery of cocaine, a controlled substance, weighing at least 400 grams; and possession of cocaine, a controlled substance, weighing at least 400 grams with intent to deliver. Appellant pled not guilty and the case went to a jury trial on the possession of cocaine with intent to deliver charge. The jury found him guilty. After a review of the presentence investigation report, the trial court assessed punishment at 40 years confinement in the Institutional Division of the Texas Department of Criminal Justice, and a fine of one dollar. He filed a motion for new trial which the trial court overruled. Appellant raises eight points of error complaining the evidence is insufficient to support his conviction, the State's jury argument was improper, the time limitation of his closing argument was too short, the denial of his Sixth Amendment right to present evidence, and the failure to define the term "knowingly." We affirm.

On August 13, 1990, Detective William M. Hastings (Hastings) of the Katy Police Department was working on a narcotics deal with a confidential informant. Hastings was on assignment to the Harris County Organized Crime Unit Narcotics Task Force as an undercover officer. The informant had set up a drug deal with Jairo Cano, a drug dealer. They met at a Stop–N–Go convenience store to discuss the terms of the deal. The informant introduced Hastings to Cano. Hastings was posing as a buyer from out of town who wanted to purchase two kilos of cocaine. They met for about 20 minutes and Cano referred to an unnamed partner numerous times. A deal was reached and Hastings was to pay $50,000 for the two kilos of cocaine. Cano gave Hastings a small sample, "about half a gram," of cocaine and "told him to check it, if [he] liked it, to give him a call back." Cano gave Hastings a phone number where he could be reached and left the scene. The phone number was to a job trailer at a construction site. Hastings field tested the sample and it was cocaine. He waited about 20 minutes and called Cano. The person who answered the phone told Hastings that Cano had gone to pick up his package and to call back in about 15 to 20 minutes. Hastings waited and called back. Cano answered and they agreed to meet at 3:30 p.m. at the Fiesta Food Mart on Bellaire and Highway 6. Hastings and the informant arrived first, parked, and waited. There were undercover surveillance vehicles set up in the parking lot, with a vehicle monitoring the "bust signal" parked about 75 feet away.

Cano arrived at 4:00 p.m. with appellant on the passenger side of his vehicle. Cano stepped out of his car and walked behind it to Hastings' vehicle. Hastings and the informant stepped out of their car to talk to Cano. Cano said he only had one kilo of cocaine with him. He wanted to do one deal that day and another deal the next day. If both of these deals went all right, then he had an endless supply of cocaine and they could do business on a regular basis. Cano told the officer to go over to his car and get in the front seat, and his friend would show Hastings the "stuff." The officer walked toward the car where appellant was still seated on the passenger side. As he approached the car, Hastings could see that appellant had a package on his lap. The passenger window was open and as he got closer to the car, appellant smiled and held the package up to Hastings. Hastings turned after seeing the package and walked back to Cano. They went around to the back of Hastings' car to count out $25,000 to pay for the one kilo. At that time, Hastings pressed the button on the bust signal and the surveillance officers moved in to make the arrest. Cano and appellant were both arrested. When appellant was pulled from the car by Officer Fullbright (Fullbright), the package

of cocaine was found on the passenger side floorboard between appellant's feet.

In point of error one, appellant alleges the evidence is insufficient to sustain his conviction for possession of cocaine with intent to deliver. He contends the evidence does not establish that he was in knowing possession of the cocaine as required by the Penal Code. *See* TEX.PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974).

In reviewing the sufficiency of the evidence, the Court must view "all the evidence in the light most favorable to the verdict" and determine whether a rational trier of fact could have found the evidence sufficient to establish beyond a reasonable doubt that appellant knew the package contained cocaine. *Villalon v. State*, 791 S.W.2d 130, 132 (Tex.Crim.App.1990) (quoting *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex.Crim.App.1988)). *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard is the same whether we are reviewing the sufficiency of circumstantial or direct evidence. *See Geesa v. State*, 820 S.W.2d 154 (Tex. Crim.App.1991). The trier of fact may reconcile conflicts in the testimony and accept or reject any or all of the evidence on either side. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex.Crim.App.1976); *Banks v. State*, 510 S.W.2d 592, 595 (Tex.Crim.App.1974). Thus, the evidence is sufficient to sustain a conviction if the collective weight of all the incriminating circumstances is sufficient. *Livingston v. State*, 739 S.W.2d 311, 330 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

In this case, the officer testified appellant arrived at the location of the drug deal with Cano. According to Hastings, appellant sat in the car, with the window down, and watched as he, Cano, and the informant discussed the deal. When the officer approached the car, he could see that appellant had a package on his lap. As he got closer to the car, appellant smiled and held the package up to Hastings. After the bust signal was made appellant just sat there in the car.

Fullbright, the arresting officer, testified that appellant was sitting in the car with his hands in his lap. When the officer approached the car with his gun drawn and ordered appellant to raise his hands, appellant did not respond. The officer repeated the order several times but appellant did not move. Fullbright reached in the window and "pulled [appellant's] hands up a little bit. [He] went to slap [appellant's] hand away with [his] pistol, but it bust[ed] his lip a little bit." The officer then opened the car door, removed appellant from the car, and laid him on the ground. He conducted a pat down search of appellant and found no weapons or money. In the car, Fullbright seized "[a]n envelope containing approximately a kilo of cocaine" from "the floorboard between [appellant's] feet." As far as the officer could recall, the envelope was sealed and was in, or laying on, a Chief's Auto Supply bag.

Charles More (More) the forensic chemist/toxicologist for the Harris County Medical Examiner's Office testified about analyzing the contents of the envelope. After stating his credentials, More explained the type of tests run on the substance, and testified that it was cocaine. He stated it weighed 976.2 grams including adulterants and dilutants, and that it was 62 percent pure cocaine. On cross-examination, he discussed the chain of custody for the envelope and stated he only received this one package to test.

Appellant testified, through an interpreter, that he was 52 years of age and was from Colombia. He has a wife and four adult children in Colombia. He worked for 20 years in Colombia at the Banco Central Hipotecario. "After you're there 20 years, the bank gives you the right to enjoy retirement" and so he retired. Although he has acquired the right to a pension, he will not begin receiving the pension until he is 55 years old. He came to Houston on March 30, 1990. He got a job as a dishwasher at the Taqueria El Paso and was still employed there on the day he was arrested. He met Cano at the Taqueria where he frequently came to eat. He had known Cano approximately one month before his arrest. Appellant lived about

eight blocks from the Fiesta Food Store and did not own a car. On the day of the offense, he left his apartment to do his grocery shopping for the week and was walking down the street. When he was about a block and a half from his apartment, Cano pulled over and asked where he was going. Appellant told him he was on his way to Fiesta and Cano said, "Get in." Cano took him to the Fiesta parking area away from the store and "immediately he got out of the car and he said, wait for me Alvaro, and when he said that, he left the car." Appellant testified that he waited "[b]ecause [Cano] asked me stay there. As he stepped out, he said, 'Wait for me a moment, Arevalo,' as he left. And I had no particular reason not to." He said he "stayed there because at no moment, at no instance, could [he] imagine the gravity of what was going on." Appellant stated that he "had no recognition of [Cano's] activity" and had he known that Cano was about to make a drug deal he "never would have gotten in his car." He testified that he sat there "some five to seven minutes" waiting "[a]nd then, immediately they [the police] all emerged, surrounding the car like bees." He stated that he "didn't see anything in the car" and "at no time did [he] gesture to [the officer] about anything that was there." Appellant said that he was pulled from the car and thrown on the ground. He had no conversation with any of the officers about cocaine or money. He has never been arrested before and "[n]ever in my life have I known this business, this kind of business, never." Appellant stated he had the impression that Cano was in the construction business. Once they were at the police station Cano told appellant, " 'What a disgrace, Mr. Alvaro. Look at the trouble I've gotten you into.' " He testified that he knew very little English, "very few words."

Appellant further testified that he "came here to know this great nation, this great country, and to visit." He came here and stayed with friends for "some 20 days." He stated that he had "known this country for about 14 years. And [he] come[s] here every three years, every three or four years." He was paid in cash at the Taque-

ria, but he stated the owner could verify that he had a job. He usually worked six days a week from 10:00 a.m. to 8:00 p.m. and was off on Sunday, but the week of the offense he traded shifts with a co-worker. Thus, he was off on Monday doing his grocery shopping. He had never ridden in Cano's car before and he did not notice any envelopes in the car. He stated, "I got in rapidly. I opened the door and jumped in, and quickly we were there. It must have taken some five or seven minutes to get there. I didn't notice anything." He further stated that he did not know where in the car Fullbright got the envelope from. He also stated that he "never lifted anything up" or "grabbed anything in [his] hand." He had never seen cocaine before, and "[t]he problems from the day, [he] never imagined."

Appellant attempted to call Cano to testify on his behalf. However, Cano had pled guilty and gotten the relatively light sentence, compared to appellant's 40 years, of 15 years confinement. Cano in his plea implicated appellant in the offense. Cano invoked his Fifth Amendment right against self-incrimination since his case was within the 30 day time period for filing a motion for new trial.

██ In order to show knowing possession of the cocaine by appellant, the State must show facts and circumstances which affirmatively link appellant to the cocaine and create a reasonable inference that appellant knew of the cocaine's existence and that he exercised care, control or management over it. *Humason v. State*, 728 S.W.2d 363, 365 (Tex.Crim.App.1987). Additionally, evidence that appellant possessed the cocaine jointly with Cano is sufficient to make such a showing. *Ayers v. State*, 570 S.W.2d 926, 928 (Tex.Crim.App. 1978). Appellant's actions, as described by Hastings, are not consistent with the innocent state of mind ascribed to by appellant. The actions of being present at the drug deal, holding the package in his lap, holding the package up for the officer to view while smiling, and concealing the package under his feet on the floorboard of the car indicate that appellant knew the package

contained cocaine. Although appellant's testimony does have a certain ring of truth to it, and we express some concern over the severity of appellant's sentence as compared to the sentence the principal, Cano, received, this Court may not sit as a thirteenth juror and reweigh the evidence. *Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Blankenship*, 780 S.W.2d at 206–07. A question of fact was simply presented for the jury to decide whether the officer or appellant was telling the truth. The evidence is sufficient for a rational trier of fact to find every element of the crime beyond a reasonable doubt. *See Edwards v. State*, 807 S.W.2d 338, 339 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). We overrule appellant's point of error one.

■ In point of error two, appellant alleges the prosecutor committed reversible error by shifting the burden of proof to appellant during closing argument. Appellant complains of the following statement by the prosecutor:

Much more, where are those other officers? Mr. Villareal could have called them. And by the way, if we're speaking about evidence that ain't here, where is the person he worked for at the Taqueria? Where is that man who he switched places with so he'd be off on Monday instead of Sunday? Where are this defendant's witnesses to frame his testimony to show you he's telling you the truth?

Appellant failed to object at trial to this statement by the prosecutor. "The proper method of pursuing an objection until an adverse ruling is to (1) object, (2) request an instruction to disregard, and (3) move for a mistrial." *Brooks v. State*, 642 S.W.2d 791, 798 (Tex.Crim.App.1982). Without even an objection at trial, appellant has not properly preserved this ground of error for appellate review.

The prosecutor's statement could, nevertheless, be reversible error if, in light of the record as a whole, the statement is "extreme or manifestly improper, violative of a mandatory statute, or inject[s] new facts harmful to the accused into the proceeding." *Id.* The State's argument does

not fit any of these categories. The argument, if improper, is not so prejudicial that an instruction to disregard would not have cured the harm. *See Cannon v. State*, 691 S.W.2d 664, 677 (Tex.Crim.App.1985). We overrule appellant's point of error two.

■ In point of error three, appellant contends the prosecutor committed reversible error by telling jurors to use the fact that appellant is a Colombian as a circumstance against him. Appellant complains of the following statement by the prosecutor:

And if I've come across as harsh on this gentleman because he's from another country, I apologize. I'm a first generation American. My parents are immigrants. The fact that he is a Columbian (sic), I didn't bring that to you. I didn't just throw that up to taint him. Mr. Villareal brought up that fact that his client is a Columbian (sic). Neither myself nor any of the other witnesses of the State made any mention of where he was from except they told you as far as they knew[,] [h]e couldn't speak English. Again, if they wanted to lie, they could have said he was talking to us at the scene, he understood everything we were saying.

Again, it's that same argument, if they were going to lie, why didn't they make up a better lie.

Hey, if he wants to come in this country and better himself, I'll do everything I can to help him, but if he's going to come here to this country and sell this garbage, I'll do everything I can to put him in prison for as long as I can. If he wants to come here and work, fine. If he wants to come here and sell dope, he's got to answer to us.

As stated in point of error two, in order to preserve error for appeal, appellant must first object to this line of argument. *Brooks*, 642 S.W.2d at 798. There was no objection by the appellant at trial to this statement and no error was preserved.

Further, the argument by the prosecutor was proper. Appellant's counsel argued to the jury that "[i]f you have to find him

guilty because he's Colombian and because this is coke, then maybe you're reaching, maybe reaching where you shouldn't be reaching." The State's argument is both an answer to argument of opposing counsel and a proper plea for law enforcement. *See Buffington v. State,* 801 S.W.2d 151, 157 (Tex.App.—San Antonio 1990, no pet.); *Yuhl v. State,* 784 S.W.2d 714, 723 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). We overrule appellant's point of error three.

■ In point of error four, appellant argues that the prosecutor committed reversible error by injecting prejudicial matters into the proceeding during final argument. Appellant complains of the following statement by the prosecutor:

> Couple more things to say. I know that as intelligent and responsible citizens, a bunch of times you've said to yourself, why can't anybody do anything about this problem with dope? It's tearing families apart, the anguish it causes on the homeless, the addicted, the young, the naive. How about the crime it causes by people having to do....
>
> Mr. Villareal: Objection, Your Honor, that's an improper plea for law enforcement.
>
> The Court: Overruled.
>
> Mr. Wisner [the prosecutor]: Thank you, Your Honor.
>
> You know, as intelligent, responsible, citizens, dope and dope dealers are probably the biggest problem we have now in this country. I know you said to yourself, why can't someone get a handle on it, why won't somebody do something about it, why can't we bring these people to justice. I don't know all the answers. There's a bunch of problems in our system with people creating the demand for this stuff, our borders, I guess I should say, a bunch of others (sic) problems all through our system. But I can tell you right now, right here, April 2nd, 1991, in this court, we have a big-time dope dealer and we've got a big amount of dope. We can't cure all the problems but if and when we get a handle on this problem, the only way we can do it in this country

is one by one, one dope dealer at a time, one seizure of dope at a time.

Appellant only objected to the first portion of the prosecutor's argument, failing to preserve error as to the remainder of the argument. *See Brooks,* 642 S.W.2d at 798. In any case, this argument reminds the jury of the serious drug problem in our nation, and is a proper plea for law enforcement. *See Tijerina v. State,* 786 S.W.2d 508, 513 (Tex.App.—Corpus Christi 1990, pet. ref'd) (State's argument to protect community in light of serious drug problem held proper); *Morrow v. State,* 757 S.W.2d 484, 494 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd), *cert. denied,* 493 U.S. 921, 110 S.Ct. 285, 107 L.Ed.2d 265 (State's argument that "drugs are killing this society" and asking jury to sympathize with the number of people who would be "lining up for that cocaine" held proper); *Layne v. State,* 752 S.W.2d 690, 694–95 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (State's argument, "[a]nd each one of you has ... probably said,.... I wish they would do something to stop it, to keep it from our children, from our loved ones. Why? Why? Why can't they stop the flow of narcotics into this community?" held proper). We overrule appellant's point of error four.

■ In points of error five and six, appellant complains he was denied effective assistance of counsel, and a fair trial, under Article I, section 10 of the Texas Constitution because the trial court limited his closing argument on guilt/innocence to 15 minutes. Appellant alleges that 15 minutes is per se unreasonable, citing this Court to *McLean v. State* which held 17 minutes to be an unreasonable amount of time. *See McLean v. State,* 32 Tex.Crim. 521, 24 S.W. 898 (1894). Appellant fails to point out that the *McLean* case made this holding after "[t]aking into consideration the number of witnesses testifying, and the conflict in the testimony...." *Id.*

More recent decisions have held that a trial court is vested with broad discretion in limiting the duration of closing arguments. *Hernandez v. State,* 506 S.W.2d 884, 886 (Tex.Crim.App.1974); *Mullen v. State,* 722

S.W.2d 808, 817 (Tex.App.—Houston [14th Dist.] 1987, no pet.). Factors to be considered in determining whether the trial court abused its discretion are: 1) the quantity of evidence; 2) conflicts in the testimony, and the 3) complexity of the issues. *Bell v. State,* 768 S.W.2d 790, 803 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd) (30 minute time limit in capital murder case not an abuse of discretion); *Decker v. State,* 734 S.W.2d 393, 395 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (15 minute time limit for closing argument not an abuse of discretion); *Moya v. State,* 691 S.W.2d 63, 65 (Tex.App.—San Antonio 1985, no pet.) (based on incomplete record, 10 minute time limit for final argument not an abuse of discretion in felony trial).

In this case, there were four witnesses who testified, the only contested issue was whether appellant had knowledge of the package itself and if so, whether he knew it contained cocaine and intended to deliver the package to Hastings. All of the testimony lasted no longer than two hours and 38 minutes. On the basis of these facts, we find the trial court did not abuse its discretion.

Additionally, the record reflects appellant did not object when the trial court announced the 15 minute time limit, did not request additional time during his argument, and did not object at the end of his argument to the time limitation. The record reflects that appellant argued for 17 minutes and covered all relevant issues in the case very cogently. *See Mullen,* 722 S.W.2d at 817 (no error shown where State argued a total of 15 minutes, appellant argued 30 minutes, and appellant did not object when trial court announced 30 minute time limit or when court denied his request for extra 5 minutes). Under the facts of this case, appellant was not denied effective assistance of counsel or a fair trial due to the 15 minute time limit on closing argument. We overrule appellant's points of error five and six.

In point of error seven, appellant alleges he was denied his right to offer evidence at his trial when defense witness, Jairo Tobon Cano, invoked his fifth amendment rights and the trial judge excused him.

The record reflects that Jairo Tobon Cano was called to the witness stand outside the presence of the jury. The following exchange took place:

The Court: The defense has made known to the Court that they desire to call you as a witness in this case. In the event they begin to ask you questions, what will you respond?

The Witness: Yes, sir. I took the fifth amendment. I don't wish to testify, sir.

The Court: All right. Are you telling me then, under your constitutional rights, you do not desire to give any evidence that might be used against you in the event you wish to appeal this case? Is that what you're saying, as according to your what your lawyer has previously told me?

The Witness: Yes, sir.

The Court: You want to ask him any questions, counsel?

Mr. Villareal: Yes, Your Honor.

Mr. Villareal: Mr. Cano, Mr. Alvaro wanted to call you to testify in this case about what happened on August the 13th, 1990. Do you understand that?

The Witness: Yes, sir.

Mr. Villareal: And are you telling this court that you do not want to testify or are you telling this court that you are willing to testify?

The Witness: Do not want to testify.

Mr. Villareal: I've got no further questions, Your Honor.

Mr. Wisner: Judge, just so the record is clear in terms of Mr. Cano, Judge, I and George Jacobs, who is also present in the courtroom right now, both were in court when this witness, Jairo Cano, entered a plea of guilty in this case on March 18th, 1991, and was sentenced by Judge Lanford. But George Jacobs has indicated in open court that he is still within the 30 day period of filing a Motion for New Trial. And in light of that, I just wanted the record to make sure as to the reasons and the validity of Mr. Cano invoking his fifth amendment rights in this trial.

\* \* \* \* \* \* \*

The Court: All right, You may stand down. Bring the jury in.

After this hearing outside the presence of the jury, appellant never called Cano to testify. Once the jury was brought into the courtroom, appellant's counsel stated that he rested his case. There is nothing in the record to indicate that the trial judge excused Cano from testifying or prevented appellant from calling Cano as a witness. Appellant never requested or received a ruling from the trial court as to the admissibility of Cano's testimony. No error has been preserved for appellate review under this point. We overrule appellant's point of error seven.

■ In point of error eight, appellant argues the trial court erred by its definition of the term "knowingly" in the jury charge. He alleges the trial court should have instructed the jury that to be guilty of possession of a controlled substance, appellant had to be aware he was in possession of a controlled substance, namely cocaine. *See Humason v. State*, 728 S.W.2d 363 (Tex.Crim.App.1987).

A review of the record reveals appellant clearly stated at trial that he had no objections to the jury charge. Since appellant failed to preserve any error as to the charge, he can only obtain a reversal if the error is so egregious and created such harm that he has not had a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). To determine the existence or degree of harm, the Court must review any error in light of the entire jury charge, the state of the evidence, including contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information regarding the trial as revealed by the record. *Id.*

In the instant case, the definition of "knowingly" used in the charge is a direct quote of the statutory definition in the Penal Code. TEX.PENAL CODE ANN. § 6.03(b) (Vernon 1974). The language of the application paragraph in the charge tracked the statutory language criminalizing possession of cocaine with intent to deliver. TEX.HEALTH & SAFETY CODE ANN.

§ 481.112 (Vernon Supp.1992). The jury was asked to determine if appellant did "knowingly possess" the cocaine. After review of the charge and the record, we find no error or harm to the appellant. Appellant's point of error eight is overruled.

Having found no merit in any of appellant's points of error, the judgment of the trial court is affirmed.