IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-568-03






TUAN ANH DANG, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY





 Price, J., delivered the opinion of the Court, in which Meyers,
Johnson, Holcomb, and Cochran, JJ., joined. Meyers, J., filed a concurring
opinion, in which Holcomb and Cochran, JJ., joined. Womack, J., concurred.
Keasler, J., filed a dissenting opinion, in which Hervey, J., joined. Keller, P.J.,
dissented.


O P I N I O N 



 The appellant was involved in a robbery and murder at his father's machine shop
when he was fifteen years old. During his trial for capital murder, several issues arose,
including the voluntariness of his confession, two lesser-included offenses, the law of
parties, and the law of conspiracy. At the close of the evidence during the guilt phase, he
trial court limited closing arguments to twenty minutes per side. Defense counsel
objected before his argument began and requested an additional three minutes when the
twenty minutes was up. The appellant was found guilty of capital murder by a jury and
sentenced to life imprisonment. 

 On direct appeal, the appellant argued that the trial court erred in limiting closing
argument to twenty minutes. The Court of Appeals held that the trial court did not abuse
its discretion in limiting closing argument to twenty minutes and affirmed the conviction. (1)

 We granted the appellant's petition for discretionary review to determine whether
the Court of Appeals erred in its holding. We conclude that the Court of Appeals erred in
holding that the trial court did not abuse its discretion by limiting closing argument to
twenty minutes and to deny defense counsel's request for an additional three minutes.

I. FACTS


 Late one evening, the victim, Binh Nguyen, was working at a machine shop owned
by the appellant's father, Son Dang. Nguyen was scheduled to work until midnight, at
which point another employee, Tan Pham, would begin his shift. The customary practice
for employees working the night shift was to keep the doors locked until the next
employee arrived. On that particular night, when Pham arrived and knocked on the door,
Nguyen did not answer. Pham saw holes around the doorknob. He looked through one of
these holes and saw Nguyen lying on the floor with his head toward the door. Pham
immediately went home and called the owner Son Dang. After being apprised of the
situation, Dang called the police and then went to the shop with Pham to meet the police.

 When Officer Kerr Richards arrived at the shop, he noticed that a side door was
open and saw a body lying on the floor. After calling for an ambulance, Richards saw two
Asian males, later identified as the appellant and Quynh Tran, ransacking the office. 
Richards also saw an Asian female, later identified as Linda Nguyen, walking in another
part of the building. Concerned there might be others in the front part of the building that
he could not see, Richards decided to return to his car and call for backup. As he walked
to his car, Richards heard three gun shots coming from inside the building. He
immediately sought cover and waited for additional support to arrive.

 At this point, Dang and Pham arrived at the shop and Richards told them to wait
across the street until the police had secured the scene. Within a few minutes, the shop
and parking lot were secured by other officers. The police caught the appellant and Linda
outside the building. Shortly thereafter, Quynh and Kenneth Tran were also captured, and
they were placed in separate police cars . Sergeant G.J. Novak interviewed them about
the incident. About two hours later, Novak had all four transported to the Houston Police
Department homicide office.

 Sergeant Ted Bloyd left the appellant in the homicide office to observe questioning
of Linda and Quynh. About three hours later, Bloyd informed the appellant that he was
considered a suspect. The appellant was then taken to a magistrate for administration of
his legal warnings. Then Bloyd reminded the appellant of his legal warnings and
recorded the appellant's oral statement, (2) which was approximately ten minutes in length. 
Homicide officers continued to question the appellant intermittently for several hours, and
then took him to a juvenile detention center. The appellant's parents were told of his
whereabouts about two hours later. (3)

 During the trial, the State offered the appellant's statement and the testimony of
other witnesses to show that, on the night of the murder, the appellant and Quynh went to
rob the machine shop. Although the appellant was not armed, Quynh was carrying a
nine-millimeter pistol. Nguyen recognized the appellant and let him and Quynh into the
shop. After Nguyen returned to his work, Quynh handed the appellant the pistol and
instructed him to shoot Nguyen because he would tell the appellant's father that they had
been there. The appellant could not bring himself to shoot Nguyen, so he engaged the
safety on the gun, pulled the trigger, and told Quynh that the gun had jammed. Although
firearms-identification tests indicated that Nguyen had been shot several times and with
two different guns, the appellant told the police in his statement that Quynh alone shot
Nguyen.

 After Nguyen was killed, the appellant and Quynh quickly searched the shop for
money. The only thing that they could find was his father's nine-millimeter pistol, which
they took with them. Quynh fired several shots at the side door to make it appear that
someone had forcibly entered the shop. The appellant shot at the side door using his
father's gun.

 The appellant and Quynh went to their apartment to get a crowbar. At the
apartment, the appellant and Quynh told Linda what had happened and Quynh called
Kenneth. According to Kenneth's testimony, Quyhn told him that they had killed
someone and needed to go back to the shop. After Kenneth arrived at the apartment,
Linda was crying, and the appellant was wiping down a pistol with a towel. Kenneth
returned to the shop with his friends to act as a lookout while the others continued to
search for money. Richards arrived while the appellant, Quynh, and Linda were
continuing their search.

 During the trial, and after the State and the defense had finished presenting
evidence, the trial court informed counsel that closing arguments would be limited to
twenty minutes for each side. Defense counsel objected and said that twenty minutes was
inadequate to discuss the several ways that the State alleged that the appellant could be
found guilty. Defense counsel also emphasized that this was a capital-murder case, which
could result in the life imprisonment of a juvenile. The trial court noted the objection, but
did not grant additional time. 

 Defense counsel began arguing the appellant's case in an abbreviated manner. 
When the twenty-minute period had expired, the trial court immediately ended counsel's
argument. Defense counsel then requested an additional three minutes, which the trial
court denied. After the State's final argument, defense counsel repeated his request for
additional time, stating that he had not been able to cover the nine ways that the State had
argued that the appellant could be found guilty or to apply the law to the facts of the case. 
The trial court refused counsel's request for additional time.

 The appellant was found guilty of capital murder and sentenced to life
imprisonment. At the hearing on the motion for new trial, defense counsel listed the
specific arguments that he would have made, given additional time. The trial court
denied the appellant's motion for new trial.

 On direct appeal, the appellant claimed, among other grounds for relief, that the
trial court abused its discretion in limiting closing argument to twenty minutes. After
analyzing the statutes and relevant case law, the Court of Appeals affirmed the appellant's
conviction. 

 The Court of Appeals relied on the factors listed in Bell v. State. (4) The Court of
Appeals conceded that twenty minutes for closing argument in this case presented "a
challenging task even for the appellant's very able trial counsel." (5) It also said that "by
limiting the closing argument to just twenty minutes, the trial court came precariously
close to crossing the line," given the facts in this case. (6) Nevertheless, the court concluded
that the twenty-minute time limitation was neither arbitrary nor unreasonable and
concluded that the trial court did not abuse its discretion in limiting closing argument. (7)

II. LAW


 We have held that trial courts have broad discretion in determining the length of
arguments during a trial. (8) Of course, trial courts have broad discretion in managing the
course of a trial generally. (9) However, this discretion is not limitless. For example, Rule
of Evidence 611 permits a trial court broad discretion in controlling the mode and order
of interrogation of witnesses and presentation of evidence. (10) Under this rule, the scope of
a trial court's exercise of discretion is limited to that which is (1) reasonable and (2) in
the pursuit of justice as well as efficiency. (11)

 The Code of Criminal Procedure does not provide much guidance to the trial
courts regarding how long arguments can be. The statutory right to argue at the close of
the evidence is derived by inference from Articles 36.07 and 36.08. (12) 

 Article 36.07 gives broad discretion to the trial court regarding the general order of
arguments with the caveat that the State has the right to present the concluding argument. 
Because the legislature addressed the order in which arguments should be presented, we
can assume that an implicit right to closing argument exists. 

 Under Article 36.08, the court is prohibited from restricting arguments in felony
cases to less than two on each side. This Court has interpreted this to mean that a
defendant is entitled to two arguments if he is represented by more than one lawyer. (13) If a
defendant has the right to two closing arguments, then we can presume that he has the
right to one closing argument. 

 It would be a hollow right to afford a defendant the right to have an argument
without the right that he be allotted a reasonable time to make it. If a trial court were to
allow a defendant, for example, a ten second argument, it would be worthless to the
defendant because his counsel would not have time to address the facts and law
reasonably. As a result, we conclude that the restrictions placed upon the parties by the
trial court must be reasonable. So far, we have provided little guidance about how to
determine what is a reasonable amount of time in any given case.

 We have rarely addressed complaints by defendants that a trial court's time limit
was unreasonable. In Walker v. State (14) and McLean v. State, (15) we determined that the
time limit set by the trial courts amounted to a constructive denial of the defendant's right
to be fully heard, and thus, constituted a basis for reversible error. 

 In Walker, we concluded that the time limitation set by the trial court violated the
defendant's rights as enumerated by former Article 4 of the Code of Criminal
Procedure. (16) Article 4, in its entirety, can currently be found in the Texas Code of
Criminal Procedure as Article 1.05. (17) We said that

 where there are contested issues, and when contradictory and voluminous
evidence requires patient and careful consideration on the part of the jury,
and challenges the skill and ability of counsel to sift the false from the true,
and show suspicious facts to be consistent with innocence. The accused has
an undoubted right to any advantage from this source. Yet this right may be
utterly destroyed if the court can arbitrarily limit argument, because in his
opinion the evidence is so clear that argument can not vary it. (18) 

 In McClean, we cited Walker and said that "[t]aking into consideration the number
of witnesses testifying and the conflict in the testimony, we think the court erred in
placing any such limitation upon counsel." (19)

 More recently, the lower appellate courts have followed similar factors in an
opinion from the Fourth Court of Appeals, Moya v. State. (20) In determining whether the
trial court abused its discretion in placing a time limitation on closing argument, the Moya
Court looked at (1) the quantity of evidence, (2) conflicts in testimony, and (3) the
complexity of the issues. (21)

 In addition to applying Moya, several courts of appeals have considered defense
counsel's conduct during argument to determine whether the trial court abused its
discretion. For example, some courts consider whether counsel (1) objected, (2)
completely used the time allotted, (3) requested additional time, (4) was cut off by the
trial court, and (5) listed the issues that would be covered if given more time. (22) All of
these factors have some relevance to a reviewing court's inquiry, though some may be
more appropriate to considering whether a defendant has preserved the complaint for
review or for determining whether the defendant was harmed.

 We conclude that reviewing courts should consider, but are not limited to
considering, the following non-exclusive list of factors on a case-by-case basis: (1) the
quantity of the evidence, (2) the duration of the trial (3) conflicts in the testimony, (4) the
seriousness of the offense, (5) the complexity of the case, (6) whether counsel used the
time allotted efficiently, and (7) whether counsel set out what issues were not discussed
because of the time limitation. We will apply these factors to this case. 

III. APPLICATION


(1) Quantity of the Evidence, (2) Duration of the Trial,


and (3) Conflicts in the Testimony


 We will consider the first three factors together. The record indicates that eleven
witnesses testified over a two-day period. The defense in this case presented only one
witness to the State's ten witnesses. However, the number alone does not indicate the
number or degree of potentially existing conflicts. Here, the record indicates there were
significant evidentiary conflicts that came up during defense counsel's cross-examination
of the State's witnesses.

(4) Seriousness of the Offense and 


(5) Complexity of the Issues 


 In this case, the appellant was charged with capital murder, which is, of course, a
very serious offense. If found guilty, the appellant faced a life sentence. The record and
briefs indicate that there were many complex legal issues. The State alleged eleven
different ways that the appellant could be guilty of an offense. The charge included
instructions on two lesser-included offenses, murder and felony-murder; the law of parties
the law of conspiracy; and the voluntariness of the appellant's statement. (23) The jury
deliberated for five-and-a-half hours. 

(5) Efficient Use of Time


 The record indicates that counsel used his time effectively during argument and
did not engage in improper argument. Counsel covered relevant and contested issues
from the trial and did not waste time with needless repetition. 

(6) Issues That Were Not Discussed


 During the motion for new trial hearing, defense counsel offered a list of topics
that he would have covered if given more time. There were a number of legal theories
and factual conflicts that counsel was unable to address.

 The list of legal theories included (1) intentionally or knowingly causing bodily
injury in the context of the lesser-included offense of robbery (2) intentionally or
knowingly threatening the victim or placing the victim in fear of imminent bodily injury
or death, (3) the phrase "in the course of committing theft," (4) the portion of the
definition of theft that deals with the intent to permanently deprive the owner of his
property, (5) the phrase "without the owner's effective consent," (6) who the owner of the
property was, (7) whether there was a conscious objective or desire to cause a certain
result, (8) the definition of acting knowingly, (9) the definition of party liability, (10) the
law of conspiracy.

 The list of factual conflicts included (1) problems with the medical examiner's
testimony regarding the bullet that caused the victim's death because the medical
examiner testified incorrectly and then corrected the false impression, (2) the credibility
of the officer who testified about the voluntariness of the appellant's statement, (3) the
application of the law to the facts regarding the juvenile statement, and (4) additional
conflicts in the testimony of the co-defendant. 

 Although the trial court has considerable discretion in setting time limits to
efficiently move its docket along, we conclude that the factors weigh in favor of
concluding that the trial court abused its discretion in this case.

IV. CONCLUSION

 We hold that the Court of Appeals erred when it concluded that the trial court did
not abuse its discretion. We reverse the judgment of the Court of Appeals and remand the
case to that Court for a harm analysis.


Delivered: January 26, 2005.

Publish.

1. Dang v. State, 99 S.W.3d 172 (Tex. App.-Houston [14th Dist.] 2002).
2. The voluntariness of the appellant's statement and alleged Family Code violations were
presented in a pretrial motion to suppress, which the trial court denied. The appellant requested
that these issues be presented to the jury. The trial court allowed a jury instruction regarding the
voluntariness of the statement only.
3. There is some dispute about when the appellant's parents were informed of his arrest.
4. 768 S.W.2d 790, 803 (Tex. App.--Houston [14th Dist.] 1989, pet. ref'd) (stating that the
factors to be considered to determine whether a trial court has abused its discretion in limiting
defense counsel's arguments are (1) the quantity of the evidence, (2) conflicts in the testimony,
and (3) the complexity of the issues).
5. Dang, 99 S.W.3d at 190.
6. Dang, 99 S.W.3d at 191.
7. Ibid.
8. Hernandez v. State, 506 S.W.2d 884, 886 (Tex. Crim. App. 1974); Robinson v. State,
415 S.W.2d 180, 182 (Tex. Crim. App. 1967).
9. See generally Tex. R. Evid. 611.
10. Ibid.
11. Ibid.
12. Tex. Code Crim. Proc. art. 36.07; Tex. Code Crim. Proc. art. 36.08.
13. Varela v. State, 561 S.W.2d 186 (Tex. Crim. App. 1978).
14. Walker v. State, 32 Tex. Crim. 175, 22 S.W. 685 (1893) (holding that it was reversible
error to limit defense counsel to forty-five minutes for closing argument in a theft case).
15. McLean v. State, 32 Tex. Crim. 521, 24 S.W. 898 (1894) (holding that it was reversible
error to limit defense counsel to seventeen minutes for closing argument in an adultery case).
16. Walker, 32 Tex. Crim. at 179, 22 S.W. at 686.
17. Code of Criminal Procedure Article 1.05 states


 In all criminal prosecutions the accused shall have a speedy public trial by an
impartial jury. He shall have the right to demand the nature and cause of the
accusation against him, and to have a copy thereof. He shall not be compelled to
give evidence against himself. He shall have the right of being heard by himself,
or counsel, or both; shall be confronted with the witnesses against him, and shall
have compulsory process for obtaining witnesses in his favor. No person shall be
held to answer for a felony unless on indictment of a grand jury.
18. Walker, 32 Tex. Crim. at 179, 22 S.W. at 686.
19. McLean, 32 Tex. Crim. at 524, 24 S.W. at 898.
20. Moya v. State, 691 S.W.2d 63 (Tex. App.-San Antonio 1985) (ten minute time limit on
closing argument in a felony case not an abuse of discretion).
21. Moya, 691 S.W.2d at 65.
22. Plattenburg v. State, 972 S.W.2d 913, 918 (Tex. App.--Beaumont 1998, pet. ref'd)
(thirty-five minute time limitation not an abuse of discretion because counsel's argument was not
cut off by the trial court, counsel did not seek additional time after presenting the argument and
counsel did not identify what issues he would have addressed to the jury given additional time);
Arevalo v. State, 835 S.W.2d 701, 707 (Tex. App.--Houston [14th Dist.] 1992, no pet.) (15
minute time limit for closing argument in a narcotics case not an abuse of discretion based on
Moya factors, no objection to time limit before or after argument, no additional time requested,
and counsel covered all contested issues); Barajas v. State, 732 S.W.2d 727, 729 (Tex.
App.-Corpus Christi 1987, pet. ref'd) (twenty minute time limitation not an abuse of discretion
because counsel failed to object after presenting the argument and failed to preserve any error).
23. The dissent in the Court of Appeals' opinion noted that the jury charge itself took 21
minutes to read and the impossible task assigned to defense counsel "to explain, apply and argue
the charge in less time than that required to simply read the charge." Dang, 99 S.W.3d at 198.