

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00470-CR
### NO. 02-12-00471-CR
### NO. 02-12-00472-CR

RAY DAMONTA JORDAN A/K/A                APPELLANT
RAY JORDAN

V.

THE STATE OF TEXAS                       STATE

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Ray DaMonta Jordan a/k/a Ray Jordan appeals his convictions for delivery of a controlled substance, to-wit cocaine, unlawful possession of a firearm, and possession of cocaine, with the intent to deliver. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Background Facts**

On December 15, 2011, a police officer with the City of Fort Worth Police Department, working undercover in the narcotics unit, telephoned Appellant to set up a buy of crack cocaine. After a conversation in which Appellant told the officer that he would be home, she went to Appellant's apartment wearing a wire. At the apartment, the officer asked Appellant for $20 worth of crack cocaine, which Appellant sold to her after removing it from his pants pocket.

After the undercover officer left, but later that same day, a SWAT team arrived at Appellant's apartment to execute a search warrant. When they entered, Appellant was seated on the couch. He saw the SWAT team, stood up with his hands "in front of his waistband underneath clothing," and ran into the bathroom. Appellant shut the bathroom door and used his body to keep the door shut. The SWAT team had to kick the bathroom door down and drag Appellant out of the bathroom to take him into custody. Police searched the apartment and found letters addressed to Appellant at the apartment's address and a digital scale in the living room, pictures of Appellant and a shotgun in the master bedroom, and a cooler on the balcony outside the master bedroom, containing a paper bag with two plastic baggies of crack cocaine.

Appellant was arrested. The two other occupants of the house, Casmere Mackey and Alfred Wright, were found sleeping in the apartment's second bedroom and were also arrested. Mackey was identified as having previously sold crack cocaine to an undercover officer.

2

Appellant pleaded guilty to intentional or knowing delivery of a controlled substance, namely, cocaine of less than one gram for the transaction that preceded the execution of the search warrant.[2]  Appellant was indicted for two additional offenses based on the contraband found during the execution of the search warrant.  He pleaded not guilty to intentional or knowing possession of a firearm by a felon and to intentional or knowing possession of a controlled substance, namely, cocaine of four grams or more but less than 200 grams, with the intent to deliver.[3]  During trial, Appellant stipulated that he had been convicted of a felony on May 7, 2009.

A jury found Appellant guilty of all three charges.  Prior to the punishment phase of trial, Appellant pleaded true to the allegation that he had been previously convicted of the felony offense of possession of a controlled substance, namely cocaine, of one gram or more but less than four grams.  The jury assessed punishment of two years' confinement for the offense of delivery of a controlled substance, four years' confinement for the offense of possession of a firearm by a convicted felon, and twenty years' confinement for the offense of

_____

[2]Appellant appeals his conviction for delivery of a controlled substance in cause number 02-12-00471-CR.

[3]Appellant appeals his conviction for possession of a controlled substance with intent to deliver in cause number 02-12-00470-CR and his conviction for unlawful possession of a firearm in 02-12-00472-CR.

possession with the intent to deliver a controlled substance.[4]  The trial court sentenced Appellant accordingly.  Appellant then filed these appeals.

## Discussion

### I.  *Anders* brief

In appeal number 02-12-00471-CR for his conviction for delivery of a controlled substance less than one gram, Appellant's court-appointed counsel has filed a motion for leave to withdraw as counsel and a brief in support of that motion.  Appellant pleaded guilty to this charge.

Counsel avers that in his professional opinion, the appeal is frivolous. Counsel's brief and motion meet the requirements of *Anders v. California* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds for relief.  *See* 386 U.S. 738, 87 S. Ct. 1396 (1967).  This court afforded Appellant the opportunity to file a pro se response to the *Anders* brief, but he did not do so.  The State also declined to submit a brief.

Once an appellant's court-appointed attorney files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of *Anders*, this court is obligated to undertake an independent examination of the record.  *See*

---

[4]The statutory range of punishment for delivery of a controlled substance of less than one gram is confinement for 180 days to two years.  Tex. Penal Code Ann. § 12.35(a) (West Supp. 2013).  The statutory range for unlawful possession of a firearm by a convicted felon is two to ten years.  *Id.* § 12.34(a) (West 2011).  The statutory range of punishment for possession of a controlled substance of one gram or more but less than four grams with intent to deliver as enhanced is fifteen to ninety-nine years or life.  *Id.* §12.42(c)(1) (West Supp. 2013).

*Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays v. State*, 904 S.W.2d 920, 922–23 (Tex. App.—Fort Worth 1995, no pet.). Only then may we grant counsel's motion to withdraw. *See Penson v. Ohio*, 488 U.S. 75, 82–83, 109 S. Ct. 346, 351 (1988).

We have carefully reviewed the record and counsel's brief. We agree with counsel that this appeal is wholly frivolous and without merit; we find nothing in the record that might arguably support the appeal. *See Bledsoe v. State*, 178 S.W.3d 824, 827–28 (Tex. Crim. App. 2005); *see also Meza v. State*, 206 S.W.3d 684, 685 n.6 (Tex. Crim. App. 2006). Accordingly, we grant counsel's motion to withdraw and affirm the trial court's judgment in appeal number 02-12-00471-CR.

## II. Sufficiency of the evidence

In Appellant's two remaining appeals, he challenges the sufficiency of the evidence supporting his convictions for possession of cocaine with intent to deliver and for unlawful possession of a firearm by a convicted felon. Specifically, he argues that the evidence is insufficient to support the finding that he was in possession of the cocaine found in the cooler on the balcony or the shotgun found in the master bedroom. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The standard of

5

review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## A. Possession with intent to deliver

A person commits the offense of possession of a controlled substance with intent to deliver when he knowingly or intentionally possesses the contraband with intent to deliver it. Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .112(a)–(b) (West 2010). In order to show possession of the cocaine by Appellant, the State must show facts and circumstances which affirmatively link him to the cocaine and create a reasonable inference that he knew of the cocaine's existence and that he exercised care, control, or management over it. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Appellant's mere presence at the site where the drugs were located, without more, is insufficient to establish actual care, custody, or control of the contraband. *See Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). The State may offer evidence of direct or circumstantial links that establish that the appellant's connection with the contraband was more than just fortuitous. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) (*citing Poindexter*, 153 S.W.3d at 405–06). When deciding whether the evidence is sufficient to link the appellant to the contraband, the trier of fact is the exclusive

6

judge of the credibility of the witnesses and the weight to be given to their testimony. *See Poindexter*, 153 S.W.3d at 406.

The Court of Criminal Appeals has enumerated the following nonexclusive list of factors to consider in determining whether or not an appellant is linked to the contraband in question: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12 (citing *Evans v. State*, 185 S.W.3d 30, 36 (Tex. App.—San Antonio 2005)). In ascertaining the sufficiency of the evidence to legally link Appellant to the contraband, it must be remembered that it is the logical force of the links and not the number that is decisive. *See id.* at 166. The force of these links need not be

such as to exclude every other alternative hypothesis except the defendant's guilt. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995).

The cocaine was found in a cooler on a balcony connected to the master bedroom of the apartment where Appellant had sold an undercover police officer cocaine earlier that day. The undercover officer testified that Appellant had been present in the apartment when two previous drug buys were made from other individuals. When the SWAT team entered the apartment, Appellant ran into a bathroom and tried to barricade himself inside. *See Arevalo v. State*, 835 S.W.2d 701, 704 (Tex. App.—Houston [14th Dist.] 1992, no pet.) ("Appellant's actions . . . are not consistent with the innocent state of mind ascribed to by appellant."). The officer who found the cocaine testified that the amount of drugs found was consistent with a "dealer amount" of drugs. He estimated that the street value of the cocaine was approximately $1,200.

Appellant's mother was on the lease for the apartment, but Appellant was not listed. Appellant's sister lived in the apartment and was found asleep with her boyfriend in the other bedroom when the search warrant was executed. She was arrested at the same time as Appellant.

Police officers found two letters addressed to Appellant at the apartment's address. *See Cooper v. State*, 852 S.W.2d 678, 681 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (holding that two envelopes addressed to defendant in room where drugs were found constituted affirmative link between defendant and drugs). One envelope bore a postmark from two months prior to Appellant's

8

arrest. In the master bedroom, officers found male clothing and shoes that were the same size as the shoes Appellant was wearing at the time of his arrest. *See Figueroa v. State*, 250 S.W.3d 490, 501 (Tex. App.—Austin 2008, pet. ref'd) (holding that appellant's personal belongings found in the bedroom where the drugs were located linked appellant to the drugs). Photographs of Appellant, one in which he was at a nightclub, were also found in the master bedroom. The other two people found in the apartment were asleep together in the other bedroom. One of the officers who searched the house testified that based on the items he found in the master bedroom and interviews with the other people found in the apartment, he believed that the bedroom was Appellant's.

Appellant's girlfriend testified that Appellant lived with her in another apartment with her brother, her mother, and her two children. She said that Appellant rapped as a career and that he did not have steady employment. She said that she was also not working at the time of Appellant's arrest and that her mother supported her and Appellant. At the time of his arrest, Appellant had a daughter who was three or four years old. A child's car seat was found on the balcony near the cooler containing the cocaine.

When all this evidence is considered, its logical force lends itself to the conclusion that Appellant possessed the cocaine. The links to Appellant are sufficient to support the jury's rational conclusion that the cocaine was his. We overrule Appellant's issue in cause number 02-12-00470-CR.

9

## B. Unlawful possession of a firearm

A person who has been convicted of a felony commits an offense of unlawful possession of a firearm if he possesses a firearm after conviction and before the fifth anniversary of his release from confinement following conviction of the felony or his release from supervision under community supervision, parole, or mandatory supervision, whichever date is later or, after the five-year period, at any location other than the premises at which the person lives. Tex. Penal Code Ann. § 46.04(a) (West 2011). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *See James v. State*, 264 S.W.3d 215, 218 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (citing Tex. Penal Code Ann. § 6.01(b) (Vernon 2007)).

As with the cocaine, if the firearm is not found on the defendant or is not in his exclusive possession, the evidence must affirmatively link him to the firearm. *See Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.). The shotgun was found near the closet in the master bedroom, where photographs of Appellant, clothing, and shoes the same size as Appellant's shoes were found. *See id.* (stating that the weapon's location in relation to the defendant's personal belongings is a factor to consider in determining possession). Although Appellant was not listed on the apartment lease, officers found two letters addressed to Appellant at the apartment's address. See *id.* (stating that defendant's relationship to other persons with access to the

10

premises is a factor to consider).  An officer testified that he believed that the room in which the weapon was found belonged to Appellant.  Appellant tried to hide when the police entered the apartment.  *See Smith v. State*, 118 S.W.3d 838, 843 (Tex. App.—Texarkana 2003, no pet.) ("The jury also could have concluded that Smith's flight from Grandfield was indicative of a consciousness of guilt.").

When this evidence is considered, the logical force of the links between Appellant and the shotgun lends itself to the conclusion that Appellant possessed the weapon.  The evidence is sufficient to support the jury's rational conclusion that the shotgun was Appellant's.  We overrule Appellant's issue in cause number 02-12-00472-CR.

## Conclusion

Having overruled Appellant's issues in cause number 02-12-00470-CR and 02-12-00472-CR and having granted Appellant's attorney's motion to withdraw in cause number 02-12-00471-CR, we affirm the trial court's judgment in all three cases.

/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 24, 2014

11